UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

---

JOANNE BOONE,
As Special Administrator of
Estate of David Boone, and
AMIYA A. DONELSON,
by Robert A. Levine, her Guardian Ad Litem,

    Plaintiffs,

    v.            Case No. 08-C-0167

CITY OF MILWAUKEE, NANETTE HEGERTY,
and DAVID MARTINEZ,

    Defendants.

---

DECISION AND ORDER
GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT, AND SETTING FINAL PRETRIAL CONFERENCE

    On January 12, 2007, Police Officer David Martinez fatally shot David Boone in Milwaukee, Wisconsin. Plaintiffs maintain that at the time of the shooting there was no threat of death or serious bodily harm to Martinez or any other person because another officer observed David Boone laying face down on the ground with his arms outstretched within seconds of being shot. Martinez maintains that the force was reasonable because Boone was advancing toward him in an upright position when he fired the fatal shot. Defendants have moved for summary judgment even though many of their arguments go to the weight of the evidence and are better suited for a motion in limine or a *Daubert* motion. For the reasons set forth below, any claims based on a Fourteenth Amendment due process violation, *Monell*, or against former Chief of Police Nanette Hegerty will be dismissed. Plaintiffs' Fourth Amendment claim against Martinez will proceed to trial.

FINDING OF FACTS

Although the parties have submitted extensive proposed findings of fact, many are in dispute and others are not properly supported by admissible evidence. The following summary of events is limited to matters not in dispute. On June 18, 2008, Milwaukee Police Officers David Martinez and John Graber were in a marked police vehicle on patrol in Milwaukee, Wisconsin, in the vicinity of 49th Street. (Martinez Aff. ¶¶ 1-5.) Graber attempted to initiate a stop after seeing Boone on a bicycle. Graber exited his patrol vehicle and pursued Boone on foot, while Martinez drove the vehicle in an attempt to apprehend Boone. (Martinez Aff. at ¶¶ 8-14.) Eventually, Martinez exited the vehicle to pursue Boone. (Martinez Aff. ¶ 15.) The chase extended across multiple yards, as Boone and the officers jumped numerous fences and other obstacles. (Martinez Aff. ¶¶ 15-16.)

According to Martinez, he and Boone fought hand-to-hand and his weapon ended up in Boone's hands. (Martinez Aff. ¶¶ 16-8.) Martinez testified that Boone fired one round before the weapon malfunctioned. (Martinez Aff. ¶¶ 19-23.) Martinez added that after regaining control of the weapon, he was able to fix it. (Martinez Aff. ¶ 25.)

Graber arrived on scene after hearing a gunshot, drew his weapon, and ordered Boone to stop. (Martinez Aff. ¶ 23-4.) Instead, Boone ran, and the pursuit continued. (Martinez Aff. ¶ 26.)

By this time, additional officers were arriving. (Martinez Aff. ¶¶ 32-3.) Martinez was still moving around the area and encountered Boone in a yard. (Martinez Aff. ¶¶ 34-7.) Boone was shot twice, and died from his wounds. (Martinez Aff. ¶¶ 46-9; Martinez Dep. at 110 -11.)

CONCLUSIONS OF LAW

Summary judgment is appropriate if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In deciding a motion for summary judgment, the court must view all facts and draw all inferences from those facts in the light most favorable to the non-moving party. *Schuster v. Lucent Technologies, Inc.*, 327 F.3d 569, 573 (7th Cir. 2003). However, the non-moving party may not simply rest on its allegations; rather, it must come forward with specific facts that would support a jury's verdict in its favor. *Van Diest Supply Co. v. Shelby County State Bank*, 425 F.3d 437, 439 (7th Cir. 2005). The non-moving party must show that the disputed fact is material, or outcome-determinative, under applicable law. *Local 1545, United Mine Workers v. Inland Steel Coal Co.*, 876 F.2d 1288, 1293 (7th Cir. 1989). However, credibility determinations "are jury functions, not those of a judge." *Anderson v. Liberty Lobby*, 477 U.S. 242, 254 (1986).

To address Boone's excessive force claim brought under § 1983, the court must identify the constitutional right allegedly infringed by the challenged application of force. *Graham v. Conner*, 490 U.S. 386, 394 (1989). Boone brought his claims under the Fourth and Fourteenth Amendments. However, all claims that law enforcement officers have used excessive in the course of an arrest, investigatory stop, or other seizure of a free citizen should be analyzed under the Fourth Amendment. *Id.* at 395. The Fourteenth Amendment's due process clause protects pretrial detainees from excessive use of force. *Bell v. Wolfish*, 441 U.S. 520, 535 n. 16 (1979). Accordingly, any Fourteenth Amendment due process claim in the amended complaint will be dismissed.

To establish a claim of excessive force under the Fourth Amendment, plaintiffs must show 1) there was a seizure, and 2) the seizure was objectively unreasonable. *Campbell v. White*, 916 F.2d 421, 423 (7th Cir. 1990). The reasonableness of the action is analyzed under the "totality of the circumstances." *Scott v. Edinberg*, 346 F.3d 752, 756 (7th Cir. 2003) (internal citations omitted). When an officer shoots a weapon at a suspect, it is a seizure. *U.S. v. Bradley*, 196 F.3d 762, 769 (7th Cir. 1999).

There is no dispute that Martinez seized Boone when he shot him twice. Thus, the first prong of the test is satisfied. Next, under the Fourth Amendment standard, the court must decide whether the shooting of Boone was objectively reasonable. Because the reasonableness inquiry "nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom," summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly. *Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005) (reversing the grant of summary judgment in favor of the officers and city for excessive force claim noting that a court may not assess the credibility of witnesses, choose between competing inferences, or balance the relative weight of conflicting evidence). For example, summary judgment is not appropriate where it is disputed whether the fleeing suspect posed an immediate threat when the officer shot him in the back and there was no particular reason to believe the suspect was armed. *Ellis v. Wynalda*, 999 F.2d 243, 247 (7th Cir.1993).

Defendants submit that Martinez and Graber attempted to speak with Boone when they observed him riding an unlicensed bicycle the wrong way on a one way street. Martinez pursued Boone as he pedaled away then fled on foot. Moreover, they maintain that after engaging in a hand-to-hand confrontation, Boone was able to remove and fire

Martinez's gun toward him. At about that time, Martinez's gun malfunctioned, Boone ran from the location, and another officer ran after Boone. Martinez pursued Boone and discovered him near a garage on 49th Street. Boone did not obey Martinez's commands and kept advancing toward him. Martinez backed up but knew he did not have much room because of a chain link fence. Martinez contends that he fired the weapon to protect his life, and that he shot Boone again because Boone did not stop after the first shot.

In considering a motion for summary judgment, the court construes the facts in the light most favorable to the nonmoving party. Here, plaintiffs have presented evidence that the reason underlying the initial stop was riddled with inconsistencies, that physical evidence does not support the defendant's position that Boone tried to shoot Martinez, and that Martinez was unreasonable in his decision to shoot Boone. Significantly, plaintiffs use the sworn deposition of Rodney Lloyd to show that, seconds prior to gun shots, Boone was lying on the ground while Martinez was standing over him with his weapon drawn and that Boone was compliant with Martinez's commands to stay on the ground.

Viewing the evidence presented in the light most favorable to the plaintiffs, there is a question of fact regarding the events surrounding the shooting of Boone. A jury could draw a reasonable inference in favor of the plaintiffs based upon the inconsistent testimony and statements regarding the stop, inconsistencies between Martinez's affidavit and prior testimony, Lloyd's statement that he saw Boone on the ground with his arms outstretched, and the undisputed fact that Boone was unarmed at the time he was shot.

Defendants next suggest that even if there is a question as to the lawfulness of Martinez's decision to shoot Boone, Martinez is entitled to qualified immunity. The test

for qualified immunity has two parts: 1) whether the facts allege a constitutional violation; and 2) whether the right was clearly established at the time it was violated. *Crull v. Sunderman*, 384 F.3d 453, 460 (7th Cir. 2004). The second element of the test incorporates the reasonableness of the officer's actions. *Wilson v. Layne*, 526 U.S. 603, 614 (1999). Generally, "it is unreasonable for an officer to seize an unarmed, nondangerous suspect by shooting him dead" unless the officer has probable cause to believe that his actions will prevent great bodily harm. *Brosseau v. Haugen*, 543 U.S. 194, 197 (2004)(citing *Tennessee v. Garner*, 471 U.S. 1, 11 (1985))*.*

When taken in the light most favorable to plaintiffs, there are significant disputed, material facts that the jury must consider in determining the reasonableness of Martinez's actions. These disputed facts have a direct impact on Martinez's assertion that he is entitled to qualified immunity. Specifically, plaintiffs have put forth sufficient evidence through the testimony of Lloyd that Martinez may have violated Boone's Fourth Amendment right to be free from excessive force which right was clearly established at the time of the shooting.

As a final matter, plaintiffs assert claims against the City of Milwaukee and former Police Chief Nannette Hegerty charging the failure to train or supervise Martinez and a widespread custom or policy that police officers refrain from reporting or relating misconduct by other officers. Plaintiffs submit that a "blue of wall silence" in the Milwaukee Police Department protected police officers from investigation, a theory of cortical perception[2] was fabricated to protect Martinez and other police officers, defendants

---

[2] The admissibility of cortical perception theory is not addressed in this opinion but may come before the court on a properly drafted evidentiary motion.

-6-

failed to initiate sufficient investigative proceedings for incidents where police officers have shot civilians, defendants have not used all available laboratory resources when investigating police shootings, and defendants have failed to supervise and train police officers properly.

With respect to former Police Chief Nannette Hegerty, an individual is liable under § 1983, only if that person has had "personal involvement in the alleged constitutional deprivation . . . ." *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003). Agency principles of respondent superior and vicarious liability do not apply in § 1983 litigation. *Kinslow v. Pullara*, 538 F.3d 687, 692 (7th Cir. 2008) (citing *Monell v. New York City Dep't Soc. Servs.*, 436 U.S. 658, 691 (1978). There is no evidence in this record that Hegerty, through her own actions, permitted Martinez to remain on the Milwaukee Police Department knowing he tended to use excessive force or that she did not adequately train him regarding the use of force when effecting an arrest. In addition, the official capacity claim against Hegerty constitutes a claim against the City of Milwaukee. *Gossmeyer v. McDonald*, 128 F.3d 481, 494 (7th Cir. 1997). Hence, suing Hegerty in her official capacity is duplicative inasmuch as the City is already a defendant. Accordingly, the claims against Hegerty will be dismissed.

Next, *Monell* claims may be shown through the customs of a police department that are so widespread that they have the force of law. *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011). Plaintiffs have submitted evidence that the "blue wall of silence" was a term used for officers not reporting or relating misconduct by fellow police officers. Plaintiffs appear to contend that the "blue wall of silence" was so persistent that it carried the force of law and that the use of excessive force resulting in Boone's death

establishes that the police department failed to properly train its officers in excessive force amounting to deliberate indifference to the risk of death.

Even viewing the evidence in the light most favorable to the nonmoving party, plaintiffs have not produced material evidence that there is a pattern or practice in the form of the "blue wall of silence" with respect to any material fact at issue here. While the "blue wall of silence" is a term for officers not reporting misconduct, Lloyd made statements *in this case* that suggests Boone was face down with his arms outstretched when shot. Plaintiffs suggest that Lloyd suffered retaliation in the form of a transfer for making these statements, but Lloyd testified in his deposition that he volunteered for an assignment as a school resource officer following the shooting, that it was neither a promotion or demotion, and that he did not feel intimated by other members of the police department when he gave his statements in this case.

Further, the plaintiffs acknowledge that there was a criminal investigation conducted by the Milwaukee Police Department followed by an independent review by the Milwaukee County District Attorney. Lloyd's statement was taken and reviewed by the District Attorney, who concluded that Lloyd was testifying truthfully but "jumbled" the sequence of events given the stress of the situation. Based on the investigation conducted by his office and familiarity with the shooting of Boone, District Attorney John Chisholm made his determination that the use of force by Martinez was justified and privileged under Wis. Stat. § 939.48.[3]

---

[3](1) A person is privileged to threaten or intentionally use force against another for the purpose of preventing or terminating what the person reasonably believes to be an unlawful interference with his or her person by such other person. The actor may intentionally use only such force or threat thereof as the actor reasonably believes is necessary to prevent or terminate the interference. The actor may not intentionally use force which is intended or likely to cause death or great bodily harm unless the actor reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or herself. Wis. Stat. § 939.48(1).

There is also evidence that, after the District Attorney decides whether to issue charges, an internal investigation is commenced. The uncontroverted evidence in this record establishes that the shooting was investigated by the Criminal Investigation Bureau and the State of Wisconsin Division of Criminal Investigation and that an autopsy was conducted by the office of the Milwaukee County Examiner. Nothing supports a finding by this court that the "blue wall" silenced Lloyd, the district attorney, the medical examiner, and other employees of the Wisconsin Department of Justice. Now, therefore,

IT IS ORDERED that defendants' motion for summary judgment is granted on plaintiffs' Fourteenth Amendment due process claim.

IT IS FURTHER ORDERED that defendants' motion for summary judgment is granted with respect to Police Chief Nanette Hegerty and the *Monell* claim.

IT IS FURTHER ORDERED that defendants' motion for summary judgment is denied with respect to the Fourth Amendment claim against Martinez.

IT IS FURTHER ORDERED that the parties shall appear for a final pretrial conference on November 9, 2011, at 9:30 AM.

Dated at Milwaukee, Wisconsin, this 26th day of September, 2011.

BY THE COURT

/s/ C. N. Clever, Jr.
C. N. CLEVERT, JR.
CHIEF U. S. DISTRICT JUDGE